IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

BRANCH BANKING AND TRUST
COMPANY, a North Carolina corporation,

                Plaintiff,

v.                                        CIVIL ACTION NO. 3:04-01055

FREDERICK G. DAVIS, a resident of West
Virginia; DAVIS CHRYSLER PLYMOUTH
JEEP EAGLE, INC., a West Virginia corporation;
CARROLL D. FINK, a resident of Ohio, in his
own capacity and as Trustee of the Gale L. Fink
Trust dated May 8, 1992; GALE L. FINK TRUST
dated May 8, 1992, a trust established under the
law of Ohio; JULIE ANN BROWN, a resident
of Ohio; FINK'S USED CARS, an Ohio general
partnership or partnerships; EASY LEASING AND
RENTAL, INC., an Ohio corporation; UGLY
DUCKLING RENT A CAR INC., a indeterminable
entity and/or fictitious name,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The issue currently pending before the Court is whether this case should be stayed as a result of Defendant Frederick G. Davis' incarceration. For the reasons that follow, the Court finds that a stay is appropriate.

This case was filed on September 29, 2004, and involves a complex auto-financing scheme in which Plaintiff Branch Banking and Trust Company alleges that Defendants conspired to defraud it out of millions of dollars. On June 14, 2006, a federal grand jury returned a thirty-eight count indictment against Defendant Davis based upon the same activities as alleged in this civil

action. On June 27, 2006, the United States Attorney's Office filed a motion to intervene in this case and stay all discovery until completion of the parallel criminal proceedings. The following day this Court held a telephone conference with the parties and granted a temporary stay of most discovery pending further briefing on the stay. At that time, Plaintiff supported the stay and Defendant Davis, Interpleader Renee Davis, and Defendants Carroll D. Fink, the Gale L. Fink Trusts, Julie Ann Brown, Fink's Used Cars, Easy Leasing and Rental, Inc. and Ugly Duckling Rent A Car, Inc. (the Fink Defendants) opposed the motion. Upon consideration, the Court determined by Order entered on September 11, 2006, that a stay was appropriate because of the Government's strong interest in resolving the criminal investigation and prosecution before additional discovery and proceedings occurred in this action.

At the time the stay was granted, the criminal case was scheduled to go to trial on December 5, 2006. Defendant Davis had retained his civil attorney Robert J. D'Anniballe, Jr. to represent him in the criminal matter as well. However, around the time the Court entered the stay of the civil action, Mr. D'Anniballe filed motions to withdraw as counsel in both the criminal and civil action because Defendant Davis was no longer able to pay for his services. The Court granted those motions and directed the Federal Public Defender's Office to appoint two new counsel to represent Defendant Davis.[1] Shortly after their appointment, counsel moved to continue the trial.

---

[1] Although there were several retained attorneys listed as acting on behalf of Defendant Davis in both cases, Mr. D'Anniballe acted as lead counsel in both cases. All retained counsel were permitted to withdraw upon motion.

Following several continuances, the trial ultimately was set to begin on March 3, 2008.[2] On March 3, Defendant Davis plead guilty to two counts of the indictment.[3] On July 10, 2008, he was sentenced to two concurrent 26 month sentences. Defendant Davis voluntarily surrendered to begin serving his sentence on August 13, 2008. According to the Bureau of Prisons website, his expected release date is July 1, 2010.

The day after his sentencing, the Government filed a motion to lift the stay in the civil proceedings. On August 11, 2008, this Court granted the Government's motion and directed the parties to conduct a new Rule 26(f) meeting. The Court also set a Scheduling/Status Conference to be held on September 8, 2008. As Defendant Davis voluntarily surrendered before the Scheduling/Status Conference occurred and he is acting pro se, the Court made arrangements for him to appear by phone at the hearing. In addition to discussing scheduling matters, the Court directed the parties at the hearing to address whether or not this case can proceed against Defendant Davis in light of his pro se and incarcerated status.

Both Plaintiff and the Fink Defendants filed briefs stating their positions. Plaintiff argued that the case should go forward against Defendant Davis, while the Fink Defendants argued

---

[2]Given the complex nature of the charges, the Court granted the first motion and reset the trial to begin on June 5, 2007. Defense counsel moved for another continuance in April of 2007. The Court granted the motion and reset the trial for October 10, 2007. Defense counsel moved for a third continuance in August of 2007. The Court granted the motion and reset the trial for January 7, 2008. Upon a fourth motion for a continuance by defense counsel, the Court reset the trial for March 3, 2008.

[3]Prior to Defendant Davis' plea, Mr. D'Anniballe rejoined his criminal defense team.

the case should be stayed. However, neither party addressed what effect certain provisions of the Federal Rules of Civil Procedure and West Virginia law may have on the issue so the Court ordered additional briefing on these points. Upon rebriefing, Plaintiff continues to argue that the case can proceed, while the Fink Defendants request that it be stayed until Defendant Davis is released from prison. In addition, upon Defendant Davis' request, his former counsel Mr. D'Anniballe filed a Notice of Special Appearance. In his letter to the Court, Mr. D'Anniballe stated that Defendant Davis is unable to retain counsel, but given the complex and significant issues presented in the case, Mr. D'Anniballe believes that Defendant Davis is unable to effectively represent himself pro se while incarcerated. Therefore, Mr. D'Anniballe asserts that the Court should either stay the case or appoint a guardian ad litem to protect Defendant Davis' interests. Upon considering all the issues raised by the parties, the Court finds that a stay of this action is necessary.

Pursuant to Rule 17(c) of the Federal Rules of Civil Procedure, "[t]he court must appoint a guardian ad litem–or issue another appropriate order–to protect a[n] . . . incompetent person who is unrepresented in an action." *Fed. R. Civ. P.* 17(c), in part. "[F]or an individual who is not acting in a representative capacity," the individual's capacity to be sued is determined "by the law of the individual's domicile[.]" *Fed. R. Civ. P.* 17(b)(1). As stated in this Court's prior Order, Defendant Davis' domicile is West Virginia and he is incarcerated in West Virginia. Thus, the Court must look to West Virginia law to determine what protections, if any, Defendant Davis is entitled to receive.

In considering this precise issue, the Fourth Circuit ruled in the *Siers v. Greiner*, No. 92-6501, 1993 WL 3475 (4th Cir. Jan. 11, 1993), that the district court erred in not appointing a guardian ad litem for an inmate whose ex-wife sought to enforce outstanding judgments against him by intervening in a civil action in which he was awarded $15,000. 1993 WL 3475, at *1. In reaching this result, the Fourth Circuit relied upon West Virginia Code § 28-5-36 and the West Virginia Supreme Court's interpretation of that statute in *Craigo v. Marshall*, 331 S.E.2d 510 (W. Va. 1985).

In *Craigo,* the court noted that West Virginia law "authorizes the appointment of a committee, on the motion of an interested party, when a person 'is confined in the penitentiary of this or any other state, or of the United States, under sentence for one year or more, or to suffer death.'" 331 S.E.2d at 512 (quoting W. Va. Code § 28-5-33, in part). In addition, the court recognized that under § 28-5-36, a committee appointed to represent an incarcerated individual may bring or defend an action on behalf of an incarcerated individual. *Id.*[4] Previously the court held that

---

[4]West Virginia Code § 28-5-36 provides, in part:

**Suits by or against convict or committee**

Such committee may sue and be sued in respect to debts due to or from such convict, and respecting all other causes of action for which the convict might sue or be sued had no such incarceration taken place, and shall have the privilege of an administrator as to the right of retaining his own debt. No action or suit shall be instituted by or against such convict after he is incarcerated, and all actions or suits to which he is a party at the time of his incarceration shall abate, and

(continued...)

§ 28-5-36 requires that prisoners serving sentences of one year or more must sue or be sued through a committee. *See Syl. Pt. 1, Waynesboro v. Lopinsky*, 182 S.E. 283 (W. Va. 1935).[5] However, the court in *Craigo* overruled its previous holding *when a suit is filed by a convict*. 331 S.E.2d at 514. In overruling its previous decision, the court reasoned "that a prisoner does not lose his civil rights by virtue of a criminal conviction," that "there is no exemption because of imprisonment from a statute of limitations," and that "it is often difficult if not impossible for a prisoner to secure the appointment of a committee or other representative prior to the running of the applicable statue of limitations." *Id*. at 513 (citations and footnote omitted). The court, however, distinguished actions *filed by* prisoners from actions *filed against* prisoners. *Id*. at 513.

With respect to actions filed against prisoners, the court found that the reasons cited for overruling its previous decision do not apply. When a suit is brought against an inmate, the court noted that the inmate is not voluntarily participating in the action, he is not seeking access to the courts, and he is not concerned about the suit being filed outside of the statute of limitations. *Id*. at 514. In addition, when an inmate files suit it can be said that he is waiving his right to be represented by a committee, next friend, or guardian. The same cannot be said, however, when an

---

[4](...continued)
        continue so until revived by or against the committee,
        whose duty it shall be to prosecute or defend, as the
        case may be.

W. Va. Code § 28-5-36, in part.

[5]Syllabus Point 1 states: "In this state a person under penitentiary sentence for one year or more can sue or be sued only through a duly appointed and qualified committee." Syl. Pt. 1, *Waynesboro*.

inmate is a defendant in a suit. *Id.* Moreover, an inmate frequently is at a significant disadvantage as a defendant because the plaintiff is often represented by counsel and he is not. Therefore, upon all of these considerations, the court held in Syllabus Point 2 of *Craigo*, that, "[i]n the absence of an express written waiver of his right to a committee under W. Va. Code, 28-5-36, or a guardian ad litem under Rule 17(c) of the West Virginia Rules of Civil Procedure, a suit cannot be directly maintained against a prisoner." *Id.* at Syl. Pt. 2.[6]

In *Quesinberry v. Quesinberry*, 433 S.E.2d 222 (W. Va. 1994), the court recognized that appointment of a guardian ad litem under Rule 17 "is not mandatory if the court can reasonably order another appropriate remedy while the convict remains under the legal disability of incarceration." *Syl. Pt. 2*, in part. For instance, the court noted that if the term of imprisonment is not too long, "the court may defer the action against the prisoner until release, provided that such a continuance is not prohibited by law and postponement of the action will not substantially prejudice the rights of the adverse party." *Id.* In addition, the court stated there is no need for counsel if a convict does not contest the suit. If the suit is contested, "the court should determine whether an adverse judgment against the prisoner on the contested issues would affect any present or future property rights." *Id.*

---

[6]Rule 17(c) provides, in part, that "[t]he court or clerk shall appoint a discreet and competent attorney at law as guardian ad litem for a[] . . . convict not otherwise represented in an action, or the court shall make such other order as it deems proper for the protection of any person under disability." *Fed. R. Civ. P.* 17(c), in part. The court also found its holding consistent with Rule 55 of the West Virginia Rules of Civil Procedure which prohibits default judgments from being entered against unrepresented inmates. 331 S.E.2d at 514.

In its memorandum, Plaintiff argues that this Court should not follow the Fourth Circuit's decision in *Siers* because it is an unpublished decision and misinterprets *Craigo*. Plaintiff argues that *Craigo* merely states that inmates are under a legal disability. It does not say that inmates lack the capacity to be sued or are incompetent to be sued as contemplated by Rules 17(b) and 17(c) of the Federal Rules of Civil Procedure. The Court finds, however, that *Craigo* clearly stands for the proposition that, under West Virginia law, inmates are entitled to certain procedural protections when a lawsuit is filed against them unless they expressly waive those protections. The Fourth Circuit recognized this holding in *Siers*, and it vacated the lower court judgment and remanded the action for appointment of a guardian ad litem.[7] Although some exceptions to this rule were later recognized in *Quesinberry*, those exceptions did not apply in *Siers,* nor do they apply in the present case.

In this case, the Court also must consider more than mere procedural safeguards for Defendant Davis. Defendant Davis was a key figure in the financial transactions which form the basis of this lawsuit. The Fink Defendants assert that they have a vested interest in Defendant Davis' active and meaningful participation in this case during discovery and trial. Even if a guardian ad litem is appointed to protect Defendant Davis' interest, the Fink Defendants assert that they will suffer substantial prejudice by his lack of availability during discovery and trial. Thus, the Fink Defendants ask the Court to stay this action until Defendant Davis' release from prison. On the other hand, Plaintiff objects to any further stay and suggests that these problems can be cured

---

[7]Moreover, even the titled of Rule 17 of the West Virginia Rules of Civil Procedure indicates it covers: "Parties Plaintiff and Defendant; Capacity."

by personal appearances and telephone and video conferences. Plaintiff asserts that a stay will prejudice its rights because of fading memories and/or unavailability of witnesses. In addition, Plaintiff states that it has no way to secure any assets the Fink Defendants may have to satisfy a future judgment.

Upon consideration, the Court is cognizant of the dilemmas facing Plaintiff if a stay is granted. In addition, the Court recognizes that a stay only should be granted in limited circumstances and after exploring reasonably available alternatives. *See generally Muhammad v. Warden, Baltimore City Jail*, 849 F.2d 107, 113 (4th Cir. 1988) (stating that courts should first consider arranging for the prisoner to be present at the trial. If infeasible, the court should consider "all other reasonably available alternatives to trial with his presence[,]" with an indefinite stay being considered as a last resort). However, the Court finds that the alternatives suggested in this case are insufficient to protect the Fink Defendant and Defendant Davis' interests.

First, the Court agrees with the Fink Defendants that appointment of a guardian ad litem and the availability of conferencing and/or personal appearances by Defendant Davis is not sufficient to cure the fundamental problem in this case. As previously mentioned, this case is extremely complex and involves hundreds upon hundreds of documents and files in which Defendant Davis will likely need access to review during discovery in this case. Although Defendant Davis may be able to get some access to these files, this Court's experience is that it is unlikely that his access will be sufficient for purposes of preparing for discovery and trial. Second, as Defendant Davis is a key figure in the auto-financing scheme which forms the basis of the

Complaint, the Court agrees that the Fink Defendants may suffer substantial prejudice in attempting to defend themselves in light of Defendant Davis' incarceration and the restrictions that entails upon his access to the necessary documents. Likewise, even with the appointment of a guardian ad litem, prejudice still exists for Defendant Davis because it is essential that he be able to review these documents in assisting in his own defense. Third, although the Court does not believe Defendant Davis' appearance in Court to be a grave security threat given the Court's contacts with Defendant Davis during his criminal case, the Court notes that Defendant Davis is incarcerated approximately three hours away and it is unclear who will pay to have him transported and housed nearby for what may be a lengthy trial. In addition, even if he appears by videoconferencing for trial and depositions, the costs of those efforts will not be insubstantial. Certainly there is no ideal solution to the problem at hand, but the Court finds that a stay of the action for approximately the next nineteen months is not too long of a delay in light of the circumstances of this case.

Accordingly, the Court **STAYS** this action temporarily until Defendant Davis is released from incarceration. Following his release, the parties may move to have the stay lifted.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:     December 2, 2008

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE